United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Q.L.N.C.,<br>Plaintiff,<br>v.<br>Frank J. Bisignano,<br>Defendant. | Case No. 25-cv-03633-PCP<br><br>**ORDER REVERSING COMMISIONER'S DECISION AND REMANDING**<br><br>Re: Dkt. No. 11 |

Pursuant to 42 U.S.C. § 405(g), plaintiff Q.L.N.C. seeks judicial review of the Commissioner of Social Security's decision denying her application for social security disability benefits under Titles II and XVI of the Social Security Act. Plaintiff asks the Court to reverse that decision and remand for an immediate calculation of benefits for the period of December 31, 2012, through September 8, 2015. For the following reasons, the Court reverses the Commissioner's decision in part and remands the matter for further proceedings.

**BACKGROUND**

Q.L.N.C. filed applications for disability insurance and supplement security income in May 2013, alleging that her disability began on December 31, 2012. AR 666. The Commissioner denied her applications on November 15, 2013, and March 11, 2014. AR 128–161, 162–191. Upon review, an administrative law judge on September 8, 2015, found plaintiff not disabled. AR 192–216. The Social Security Appeals Council denied plaintiff's request for review on March 15, 2016. AR 217–223. Plaintiff sought judicial review and this Court affirmed the ALJ's decision on September 18, 2017. AR 224–39.

On September 8, 2023, an ALJ re-considered plaintiff's application for the period from December 31, 2012, through September 8, 2015, pursuant to the class action settlement in *Hart v. Colvin*, No. 3:15-cv-623, AR 31, 288, which directed the Social Security Administration to re-

adjudicate applications for benefits without considering evidence provided by a disqualified doctor, Dr. Frank Chen. AR 285–302. On December 7, 2023, the ALJ denied plaintiff's application. AR 285. On March 15, 2024, the Social Security Appeals Council remanded the case for further ALJ consideration. AR 311–317.

On remand, the ALJ on November 1, 2024, again found the plaintiff not disabled. AR 14-28; 318–46. In that decision, the ALJ applied the SSA regulations' "five-step sequential evaluation process for determining whether a claimant is disabled." *Bustamante v. Massanari*, 262 F.3d 949, 953 (9th Cir. 2001). The five steps are:

> 1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).
>
> 2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).
>
> 3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).
>
> 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).
>
> 5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Id.* at 954. "Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's [residual functional capacity or] RFC." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222–23 (9th Cir. 2009). A person's residual functional capacity is their ability to do physical or mental work activities in a work setting. *See* 20 C.F.R. § 404.1545(a)(1). An RFC finding informs the ALJ's considerations at steps four and five. *See id.* § 404.1545(a)(5).

At step one, the ALJ found that plaintiff had not been "engaged in substantial gainful activity" since December 31, 2012. AR 325–26. At step two, the ALJ found that plaintiff's

impairments of bipolar disorder and substance use disorder were severe. AR 326. At step three, the ALJ concluded that plaintiff's impairments, though severe, did not "meet or equal" an impairment or combination of impairments listed in 20 C.F.R. pt. 404, subpart P, Appendix 1. AR 326–28. At step four, the ALJ found that the plaintiff had the residual functional capacity "to perform a full range of work at all exertional levels" but was limited to "simple repetitive tasks involving no interaction with the public and only incidental contact with coworkers (such as directing someone to the nearest restroom or exit)." AR 328. The ALJ found that plaintiff had no past relevant work. AR 335. At step five, the ALJ found that the plaintiff could do jobs that existed in significant numbers in the national economy. AR 335–36. Therefore, the ALJ concluded that plaintiff was not disabled from December 31, 2012, through September 8, 2015. AR 336.

Plaintiff now seeks review of the November 1, 2024, decision, and requests reversal and remand for payment of benefits for the period from December 31, 2012, through September 8, 2015. OB 37–38.

**LEGAL STANDARD**

On review, the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The reviewing court considers only the ALJ's decision and the factual record submitted in the agency proceedings. A district court can set aside an ALJ's findings "if they are based on legal error or are not supported by substantial evidence." *McCartey v. Massanari*, 298 F.3d 1072, 1075 (9th Cir. 2002). While the substantial evidence standard requires "more than a mere scintilla," it requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *See Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). At the same time, as long as the ALJ "show[s] [their] work, ... [t]he standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the

power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). Finally, the Court will not reverse an ALJ's harmless error, which exists when it is clear from the record that "the ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (quoting *Stout v. Comm'r*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)).

## ANALYSIS

Plaintiff raises multiple issues in challenging the Commissioner's decision, contending that the ALJ erred in concluding that plaintiff's obesity is not a severe impairment at step two; concluding that plaintiff's impairments do not meet or equal one of a list of impairments at step three; assigning various weights to the medical opinions in the record; discounting plaintiff's testimony for multiple reasons; discounting lay testimony; considering plaintiff's failure to follow treatment plans; failing to consider non-severe impairments in constructing plaintiff's RFC; and failing to supplement the record.

### I. Substantial evidence supported the ALJ's finding that plaintiff's obesity was not a "severe impairment."

Plaintiff argues that "the ALJ erred by not considering reasonably expected symptoms from obesity" including documented limitations on plaintiff's mobility. OB at 12.

Step two considers whether a claimant's alleged impairment is so severe as to significantly limit their ability to work. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). The ALJ reasoned that as to plaintiff's allegedly "disabling arthritis, obesity, and hypertension, her medical records describe minimal, if any, positive objective findings with respect to those allegations and describe no complications or limitations associated with those conditions." AR 326. The record does indeed "describe minimal, if any, positive objective findings" as to the effect that plaintiff's obesity had on her mobility. The Santa Rita intake form plaintiff identifies as the record evidence of her mobility limitations only indicated a "Yes" answer to a form question that asked, "Mobility restrictions?" AR 1401. And though plaintiff did provide testimony that she had difficulty bending down to pick objects off the floor and walking up stairs, AR 98–100, that testimony was consistent with both the ALJ's reporting "minimal, if any, positive objective findings" as to limitations

United States District Court
Northern District of California

stemming from obesity and the ALJ's conclusion that plaintiff had not shown that her obesity "had more than a minimal effect on her ability to work for 12 continuous months during the relevant time period." AR 326. The other evidence that plaintiff cites either significantly pre-dated the period at issue, AR 1221–25, or was consistent with the ALJ's conclusions, AR 153–56. Thus, substantial evidence supported the ALJ's conclusion that plaintiff's mobility limitations arising from obesity did not render her obesity a severe impairment.

## II. The ALJ committed legal error in concluding that plaintiff's impairments did not satisfy the criteria set forth in Listing 12.04.

Plaintiff challenges the ALJ's determination at step three of the disability evaluation process that plaintiff's impairments are not severe under the criteria listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. In particular, plaintiff argues that the ALJ should have applied the criteria for Listing 12.04 in 20 C.F.R. pt. 404 that existed during the period for which she seeks benefits (December 31, 2012, through September 8, 2015), rather than the revised criteria in place at the time of the ALJ's adjudication (2024).

The Supreme Court has held that, in at least some circumstances, the Social Security Administration does not have the statutory "authority to promulgate retroactive [] rules." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 215 (1988). And while the Ninth Circuit has previously declined to provide specific guidance about which version of a listing must be applied where the listing was revised during the consideration of a claim, *see Frost v. Barnhart*, 314 F.3d 359, 364 n.2 (9th Cir. 2002), Judge Beezer, concurring in part, concluded that application of the "revised standard [at issue] … would be impermissibly retroactive," citing to *Bowen* as well as the Social Security Act's statutory grant of rulemaking authority to the Secretary of Health and Human Services, *id.* at 371 (Beezer, J., concurring). Considering the fairness and due process considerations motivating the analysis into whether a rule applies retroactively, *see Smith v. Commissioner*, 678 F. Supp. 3d 1131, 1135–36 (D. Ariz. 2023), the Court concludes that the listing in place at the time of plaintiff's initial application for benefits—i.e., the pre-2016 version of Listing 12.04—applied to plaintiff's claim. By instead applying the 2024 version, the ALJ committed legal error.

As noted above, reversal on this basis would not be warranted if the ALJ's error was harmless. But as plaintiff establishes, the pre-2016 version of Listing 12.04 is meaningfully different from the 2024 version. Because the ALJ made no findings with respect to the criteria set forth in the earlier version, the Court cannot determine whether the ALJ's conclusion would have been the same had he applied the correct version of Listing 12.04. Accordingly, the ALJ's error cannot be deemed harmless.

Plaintiff also argues that the ALJ's conclusion at step three that her substance use disorder did not meet or equal a listing in 20 C.F.R. pt. 404, Subpart P, Appendix 1, was error. The ALJ considered whether plaintiffs' bipolar disorder and substance use disorder, found severe at step two, "meet or medically equal the criteria of listing 12.04," relating to "Depressive, bipolar and related disorders." AR 327; 20 C.F.R. pt. 404, Subpart P, Appendix 1. Plaintiff argues that the ALJ should have also considered whether the impairments found at step two met or were equivalent to three other impairments in the 2015 regulations: Listing 12.02 for "Organic Mental Disorders," Listing 12.06 for "Anxiety Related Disorders," and Listing 12.08 for "Personality Disorders."

The ALJ did not need to explicitly consider whether plaintiff's impairments met or equaled other regulatorily defined impairments in Appendix 1 aside from Listing 12.04. To meet the requirements of a listed impairment in the Social Security Administration's regulations, the claimant must meet the criteria of that impairment. As the government points out, plaintiffs' arguments "fails to show that any error was consequential to the ultimate nondisability determination." AB at 6. Granted, past medical professionals such as Dr. Liss and Dr. Covey did conclude that plaintiff met the criteria for "12.06 Anxiety-Related Disorders," in 2013 and 2014, respectively. AR 151–52, 169–70, AR 190–91.[1] But diagnoses alone are insufficient to meet the criteria of a listing. *See* 20 C.F.R. § 404.1525(d). Further, the diagnoses that plaintiffs cite do not

---

[1] The Court also does not think that plaintiff's "repeated incarcerations and 5150 commitments evidence a complete inability to function independently outside the home." OB at 18. Standing alone, one's prior incarcerations and commitments do not mean that one has a "complete inability to function independently outside the home," nor does it suggest that given the other record evidence in this case.

United States District Court
Northern District of California

suggest, let alone establish, eligibility for a different listed impairment because the assessments provided by Dr. Liss and Dr. Covey do not indicate at least two "marked" restrictions or difficulties as required by Listing 12.06 in 2015. *See* 20 C.F.R. pt. 404, Subpart 1, Appendix 1 (effective Aug. 12, 2015, to May 23, 2016); AR 151–52, 169–70; 20 C.F.R. § 404.1520a(c)(4). Finally, plaintiff does not point to legal authority suggesting that an ALJ must explicitly consider a wide range of potential impairments that do not plausibly apply to plaintiff's claims.

## III. Substantial evidence supported the ALJ's weighing of medical opinions.

For claims filed before March 27, 2017, the rules in 20 C.F.R. §§ 404.1527, 416.927 apply to considerations of medical opinions and prior administrative findings, as both parties agree. OB at 18; AB at 7. If a treating or examining doctor's opinion is uncontradicted, then the ALJ can reject the opinion only if the ALJ provides "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). If medical opinions conflict, the ALJ can reject one with "specific and legitimate reasons that are supported by substantial evidence." *Id.* "[A]n ALJ need not accept the [conflicting] opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Id.* (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)); *see also Britton v. Colvin*, 787 F.3d 1011, 1012 (9th Cir. 2015).

### A. The ALJ did not err by failing to explicitly discuss the factors in § 404.1527(c).

Plaintiff first argues that, "for each opinion, the ALJ needed to discuss the significance [of] the weight assigned" to each of the six factors delineated in 20 C.F.R. §§ 404.1527(c) and 416.927(c). OB at 19. But plaintiff does not cite any legal authority requiring the ALJ to specifically discuss all six factors outlined in those regulations. The pages plaintiff cites in *Orn v. Astrue*, 495 F.3d 625, 632–33 (9th Cir. 2007), explain only how an ALJ should consider conflicting medical opinions. The regulations for considering medical evidence before March 27, 2017, 20 C.F.R. § 404.1527, themselves only explain that the Administration "will evaluate every medical opinion [it] receive[s]" and that it "consider[s] all of the following factors in deciding the weight [it] give[s] to any medical opinion." In the absence of authority establishing that the ALJ must have explicitly considered all six factors in considering every medical opinion it considered,

not doing so was permissible so long as the ALJ provided adequate reasons in support of his conclusions.

**B. Substantial evidence supported the ALJ's discounting of Dr. Kalman's 2015 mental impairment opinion.**

Plaintiff argues that the ALJ improperly rejected Dr. Kalman's 2015 mental impairment opinion. Dr. Kalman conducted only one examination of plaintiff, during which her presentation was questionable as compared to her presentation in other settings. Though substantial evidence or legal authority did not support discounting Dr. Kalman's opinion based solely on it resulting from a one-time examination or on a comparison of plaintiff's presentation during that examination to other settings, the ALJ still had substantial evidence that plaintiff's presentation at Dr. Kalman's examination itself justified discounting the resulting opinion.

Plaintiff is correct that the ALJ erred in discounting Dr. Kalman's opinion to the extent that the opinion, as the ALJ wrote, "was based upon a one-time only examination." AR 332. While an examining opinion is generally given less weight than a treating opinion, *see Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020), the classification of an opinion as one from an examining rather than treating physician is grounds to discount the examining opinion *relative* to a treating one, not to discount it entirely. *See* 20 C.F.R. §§ 404.1527(b), (c).

Plaintiff is not correct that the ALJ's observation of plaintiff's "vague history" did not justify discounting Dr. Kalman's opinion. After noting that Dr. Kalman only examined plaintiff once, the ALJ explained that the "one-time only examination" was one in "which the claimant's presentation was questionable, i.e., he observed that the claimant provided a vague history." AR 332. The ALJ's reasons appear sufficiently "specific and legitimate" to justify discounting Dr. Kalman's opinion. *Bayliss*, 427 F.3d at 1216; OB at 20. The ALJ's description of the claimant "provid[ing] a vague history" tracks the ALJ's observation that, in her psychiatric evaluation with Dr. Kalman, plaintiff "told Dr. Kalman that she was taking her psychotropic medication but was vague about any specifics regarding outpatient treatment." AR 331–32. "Dr. Kalman noted that the claimant was a poor historian" and "assigned the claimant GAF score of 40, indicating some impairment in reality testing." AR 332. The ALJ had adequate reasons to justify discounting Dr.

Kalman's opinion because even Dr. Kalman recognized that the plaintiff's presentation may not have been a completely reliable presentation of plaintiff's condition at that moment.

That being said, plaintiff is correct that the inconsistency between her presentation before Dr. Kalman as contrasted with her presentation in the Pathways to Wellness treatment program supports Dr. Kalman's opinion. The ALJ justified discounting Dr. Kalman's opinion in part because "the claimant's presentation during Dr. Kalman's mental status examination is inconsistent with her presentation in the treatment notes from Pathways to Wellness, which have generally shown no hallucinations or delusions." AR 332. But the ALJ cited Pathways to Wellness notes dating back to 2010 to 2012. AR 332 (citing Exhs. 4F, 6F, AR 1229, 1283). Dr. Kalman's evaluation of plaintiff occurred in April 2015. AR 1593. The mere inconsistency between Dr. Kalman's opinion in April 2015 and the Pathways to Wellness reports in 2010 does not justify discounting Dr. Kalman's opinion; the inconsistency could conversely justify discounting the Pathways to Wellness reports and *crediting* Dr. Kalman's opinion because Dr. Kalman's opinion came later. Similarly, the John George Psychiatric Pavilion report was made in 2012. *See* AR 1253. And, plaintiff notes other reports, such as a 2015 report from Santa Rita jail observing that plaintiff referred to herself as the provider's "queen" with the provider noting that they were "unable to continue[;] conversatio[n] with p[atien]t beyond bizarre at this time." AR 1376.

Nonetheless, because the ALJ had "specific and legitimate" reasons to discount Dr. Kalman's opinion based on Dr. Kalman's own observation of plaintiff's potentially unreliable reporting of her history, the ALJ did not err in discounting Dr. Kalman's opinion.

### C. Substantial evidence supported the ALJ's discounting of Dr. Kry's November 2010 mental impairment opinion.

Plaintiff argues that the ALJ should have given some weight to the November 2010 opinion from Dr. Kry. The ALJ referred to Dr. Kry's November 2010 opinion as "a clinician at Exhibit 3F" and noted that Dr. Kry found "some marked limitations in sustained concentration and persistence." AR 333. The ALJ wrote that he did not give Dr. Kry's opinion weight because the opinion was "provided almost two years prior to the alleged onset date of December 31, 2012 and is therefore not directly relevant to the time period at issue in this decision." AR 333. Additionally,

the marked limitations reported were "inconsistent with the treatment records from Pathways to Wellness generally showing mild to moderate findings." AR 333.

Plaintiff argues that evidence from 2010 could still be relevant because her "mental impairments are chronic." OB 23. And, plaintiff maintains, the ALJ needed to compare Dr. Kry's opinion "to the administrative record as a whole, including later medical records that are consistent with the marked sustained persistence limitations Dr. Kry identified." OB at 23–24.

Generally, "[m]edical opinions that predate the alleged onset of disability are of limited relevance." *Carmickle v. Commissioner*, 533 F.3d 1155, 1165 (9th Cir. 2008). In the 2010 form Dr. Kry filled out, Dr. Kry did not elaborate when "indicating some marked limitations in sustained concentration and persistence." AR 333. Dr. Kry also did not elaborate when checking "YES" to the question, "Does this individual's mental health condition prevent them from working?" AR 1228. In fact, Dr. Kry appears not to have provided *any* treatment notes aside from checking boxes and providing terse phrases of no more than three words in three different locations. AR 1227–28. Thus, while the Court agrees that pre-onset evidence can be relevant to the extent that it supports evidence from the disability period, plaintiff has not shown that Dr. Kry's opinion provides such evidence.

Finally, though Dr. Kry's assessment suggests that plaintiff had mental health issues such as anxiety on November 30, 2010, plaintiff does not show how acceptance of Dr. Kry's opinion would have been relevant to the stage of the evaluation process for which it was used: constructing an RFC. The ALJ concluded that plaintiff could "perform a full range of work at all exertional levels" but with the limitations of "perform[ing] simple repetitive tasks involving no interaction with the public and only incidental contact with coworkers." AR 328–35. Given that this RFC appears to account for plaintiff's anxiety issues, plaintiff has not shown how any ALJ error was harmful.

Because the examination occurred on November 30, 2010, well before the period at issue of December 31, 2012, and because plaintiff has not shown that the medical opinion would have affected the RFC determination, substantial evidence supported the ALJ's decision to give Dr. Kry's opinion "no weight."

**D. Substantial evidence supported the ALJ's weighing of Dr. Tobias's 2013 mental impairment opinion.**

Plaintiff argues that the ALJ improperly gave "some" weight to Dr. Tobias's October 2013 examination of plaintiff and Dr. Tobias's conclusion that plaintiff "had no more than mild limitations in her abilities to meet the mental demands of work." OB 24; AR 331. The ALJ gave "partial weight" to Dr. Tobias's opinion and cited plaintiff's other record evidence, including her "treatment history and history of psychiatric hospitalizations" to conclude that plaintiff is "somewhat *more* limited in her capacity for work" than Dr. Tobias thought and concluded that plaintiff should be limited to "simple repetitive tasks, no interaction with the public, and only incidental contact with coworkers." AR 332. Plaintiff argues that the ALJ erred by failing to conclude that Dr. Tobias's opinions were not supported as required by regulation and by relying on Dr. Tobias's opinion being "not entirely consistent with the record as a whole." OB 24–25; AR 332.

The ALJ did not err in giving "partial weight to … Dr. Tobias' conclusions." The ALJ observed, "Dr. Tobias' opinion does have *support* from the observations, testing results, and mental status examination findings at the evaluation discussed above." AR 332 (emphasis added). And the ALJ discussed how Dr. Tobias's "conclusion is not entirely consistent with the record as a whole." AR 332.

Plaintiff argues that merely pointing to the record as a whole provides insufficient justification. But the ALJ did not do that. To the contrary, the ALJ's reasoning is consistent with the plaintiff's primary authority in support, *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). *Embrey* explained that an ALJ can disregard a treating physician's opinion "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986), *superseded by statute on other grounds as recognized in Bunnell v. Sullivan*, 912 F.2d 1149, 1154 (9th Cir. 1990)).

Here, the ALJ did just that. The ALJ provided a "detailed and thorough summary" of Dr. Tobias's examination, including plaintiff's reported symptoms and history during the examination, Dr. Tobias's notes, and the results of her mental status examination. *Id.*; AR 331. The ALJ

proceeded to note conflicting clinical evidence of plaintiff's "treatment history and history of psychiatric hospitalizations" to justify his interpretation that plaintiff is "somewhat more limited in her capacity for work" than Dr. Tobias thought. The ALJ also explained why Dr. Tobias's conclusion, that plaintiff had "mild limitations," were given only "partial weight," as opposed to full weight: "that conclusion [was] not entirely consistent with the record as a whole." AR 332. While plaintiff seems to argue that the ALJ should have given Dr. Tobias's unfavorable medical opinion *no* weight, substantial evidence supported the ALJ's decision to give Dr. Tobias's medical opinion "partial weight." AR 332.

### E. Substantial evidence supported the ALJ's weighing of the state medical consultant Dr. Saphir's opinion.

Plaintiff argues that the ALJ should not have given any weight to the opinions of Dr. Saphir, Dr. Pancho, Dr. Liss, or Dr. Covey because they all understood plaintiff to be legally presumed nondisabled. OB 25. All the opinions, plaintiff argues, incorrectly assume that "the 2011 ALJ Parnow decision still applied because of *Chavez*." *See* OB at 25. *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988), held that when an ALJ concludes that a claimant was not disabled in a period, the claimant cannot assert they were disabled during that period unless they can demonstrate "changed circumstances." *Id.* at 693. In this action, a previous ALJ decision from August 26, 2011, "prevent[ed] the claimant from now asserting that she was disabled through the date of that decision, and [] creates an ongoing presumption that she was able to work beyond the date of that decision." AR 323. The ALJ concluded that plaintiff had shown "a change of circumstances affecting the issue of disability with respect to the unadjudicated period" by "establish[ing] some worsening of her conditions." AR 323.

The ALJ gave "great weight to the assessments of the State agency medical consultant … J.R. Saphir, M.D., who found that the claimant's physical impairments [were] non-severe." AR 333. The ALJ observed that Dr. Saphir's "assessments are consistent with the minimal objective findings related to the claimant's physical impairments in the record." AR 333. In contrast, the ALJ "accord[ed] little weight to the assessments of the State agency medical consultant… L. Pancho, M.D." because they were "inconsistent with the minimal objective findings related to the

claimant's physical impairments in the record." AR 333. Both Dr. Saphir and Dr. Pancho appear to have understood their task to be assessing whether plaintiff's circumstances had changed since the 2011 Parnow decision. *See* AR 158 (Pancho), 168 (Saphir). Similarly, Dr. Liss and Dr. Covey, state agency psychological consultants, appear to have understood that they were conducting their evaluations in the context of the 2011 ALJ decision and *Chavez*. *See* AR 152 (Liss), 169–70 (Covey).

Substantial evidence supported the ALJ's decision to give varying weight to the assessments of Dr. Saphir, Dr. Pancho, Dr. Liss, and Dr. Covey, AR 333. The ALJ justified his conclusion based on each professional's conclusions and consistency with the rest of the findings in the record, such as plaintiff's past medical history. The medical professionals' notes that *Chavez* applied were accurate observations at the time because the ALJ here had not yet concluded that plaintiff had overcome *Chavez*. Further, all the medical opinions are justified not merely by reference to a legal presumption from *Chavez* but on the basis of each consultant's respective professional judgment based on their assessments of plaintiff. Disregarding the medical consultants' opinions, as plaintiff argues, would also seem to violate 20 C.F.R. § 404.1527(b)'s requirement that the Social Security Administration "will always consider the medical opinions in [a] case record together with the rest of the relevant evidence [it] receive[s]." Finally, plaintiff has not shown how the consideration of the various state medical consultants' opinions led to error, especially because the opinions vary considerably in their assessment of how severe plaintiff's physical impairments were. Therefore, substantial evidence supported the ALJ's consideration of the state medical consultants Dr. Saphir, Dr. Pancho, Dr. Liss, and Dr. Covey.

### F. Substantial evidence supported the ALJ's consideration of the state agency consultant opinions even though they mentioned Dr. Chen's evaluations.

Under the terms of the class action settlement in *Hart v. Colvin*, No. 4:15-cv-00623-JST, the ALJ was required to re-adjudicate plaintiff's application without considering an evaluation performed by Dr. Frank Chen. AR 321. Plaintiff argues that although the ALJ did not *directly* consider Dr. Chen's examination, he nonetheless erred by considering the reports of state agency medical consultants Dr. Saphir and Dr. Pancho, which "specifically listed Chen's report as

medical evidence of record that went into their opinions." OB 26.

The class action settlement in *Hart v. Colvin* provided that, "[t]hrough its Disability Processing Unit, SSA will readjudicate claims by considering the original record and any supplemental information or evidence submitted by the Class Member that relates to the previously-adjudicated period, but without considering the consultative examination report prepared by Dr. Frank Chen." *Hart v. Colvin*, No. 4:15-cv-00623, Settlement Agreement, Dtk. No. 76-1, at 9 (Sept. 19, 2016); *see also Hart v. Colvin*, Order Granting Final Approval of Class Action Settlement, Dkt. No. 88 (Apr. 17, 2017). As the government points out and the Court acknowledges, the terms of the class settlement in *Hart* do not appear to define whether "considering" a report from Chen includes considering an opinion that itself considered a report from Chen. That being said, the cited pages of the administrative record indicate that state agency consultants considered Chen's report in formulating their own opinions. *See* AR 137, 140, 185. The mere mention of Chen's reports as one input among many did not "taint" the state medical consultants' reports. To the contrary, in the reports, the doctor's opinions differed from Chen's. Therefore, the ALJ did not err in considering the medical consultants' reports merely because those consultants considered Chen's report.

### G. Assuming the ALJ should have considered Dr. Lee's 2009 opinion, the failure to do so was harmless error.

Plaintiff argues that the ALJ should have considered state agency medical consultant Dr. Lee's November 17, 2009, opinion that plaintiff's obesity would limit the work she could do because of limitations on her physical mobility. OB 26–27; AR 1220–25. Though the opinion predates the period at issue by three years, plaintiff argues that it still should have been considered in some way. Plaintiff argues that the error was harmful because the vocational examiner's jobs all had at least a "medium exertional work requirement." OB 27. The government argues that, because Dr. Lee's opinion was already considered and discounted significantly by a previous ALJ in 2011, the agency had already adjudicated whether Dr. Lee's report established physical disability stemming from plaintiff's obesity. But plaintiff makes the different argument that Dr. Lee's November 2009 report, particularly its marking of the box noting limitations on standing

and walking, AR 1221, was probative of plaintiff's limitations in the period at issue here. OB 26–27.

Whether or not the ALJ erred with respect to Dr. Lee's report, the ALJ's implicit dismissal of Dr. Lee's opinion was harmless because plaintiff has not shown how the ALJ's failure to consider Dr. Lee's 2009 opinion would have "alter[ed] the outcome of the case" finding nondisability as to a period three to six years later. *Molina v. Astrue*, 674 F.3d 1104, 1115–16 (9th Cir. 2012), *superseded on other grounds as stated in Martin v. Bisignano*, 2026 WL 1068511, at *2 (9th Cir. Apr. 20, 2026).

**H. The ALJ did not err by not discussing all of plaintiff's GAF scores.**

Plaintiff argues that the ALJ should have considered and addressed "at least eleven treating doctors who expressed opinions that were not weighed." OB 27 (citing AR 1272–86, 1260–62, 1253–54, 1255–57, 1526–27, 1528, 1508–09, 1510, 1498–1500, 1455–59).

A Global Assessment of Function (GAF) score "is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1988). A GAF score "between 41 and 50 describes 'serious symptoms' or 'any serious impairment in social, occupational, or school functioning," while a score between 51 to 60 "describes 'moderate symptoms.'" *Garrison v. Colvin*, 759 F.3d 995, 1002 n.4 (9th Cir. 2014). GAF scores are not sufficient to determine whether one's mental impairments "rise to the level of a disability (or interact with physical impairments to create a disability), [but] they may be a useful measurement." *Id.*

The ALJ considered some GAF scores. AR 329. The ALJ observed that the record showed that in November 2009, Dr. Tom assigned plaintiff "a GAF score of 65 at that time, denoting mild symptoms." AR 329. In May 2010, Dr. Tom again assigned plaintiff a GAF score of 65, "noting … that the claimant was clean and sober and had had a good response to medication with no side effects." AR 329. In May 2012, after a hospitalization on a "5150" hold, plaintiff received a "discharge GAF score of 60, indicating moderate symptoms." AR 331. In June 2012 and July 2012, Dr. Tom gave plaintiff GAF scores of 65, "indicating mild difficulty functioning." AR 331. In October 2013, Dr. Tobias gave plaintiff a GAF score of 61, "indicating mild symptoms, on a

finding that the claimant's psychiatric symptoms appeared to be partially controlled with medication." AR 331. In January 2015, plaintiff was "again hospitalized on a '5150' hold for acute psychosis after threatening staff and peers at a homeless shelter" and later given a discharge "GAF of 50." AR 331. In April 2015, Dr. Kalman examined plaintiff and gave her a GAF score of 40, "indicating some impairment in reality testing." AR 332.

The ALJ did not discuss other GAF scores that plaintiff cites, which were often provided in the context of hospitalizations or other moments of heightened care. But the ALJ did consider "the claimant's treatment history and history of psychiatric hospitalizations" in formulating plaintiff's RFC, which was "limited … to simple repetitive tasks, no interaction with the public, and only incidental contact with coworkers." AR 332. Because GAF scores do not necessarily determine mental impairment under the Social Security Act, and because the ALJ did consider plaintiff's "treatment history and history of psychiatric hospitalizations," substantial evidence supported the ALJ's decision to discuss some but not other GAF scores.

## IV. The ALJ failed to justify discounting plaintiff's testimony.

An ALJ assessing the pain testimony of a claimant must apply a two-step test. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (cleaned up). Second, if the first step is satisfied "and there is no evidence of malingering," the ALJ can reject a claimant's testimony "about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (cleaned up). The ALJ must support their credibility findings with "specific, cogent reasons," *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006), and has the responsibility to "determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record," *Treichler v. Comm'r of Soc. Sec. Admin*. 775 F.3d 1090, 1098 (9th Cir. 2014). The Court is "constrained to review the reasons the ALJ asserts." *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (cleaned up).

The ALJ concluded that plaintiff met the first step, "find[ing] that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 329.

But the ALJ concluded at the second step that "claimant's statements about the intensity, persistence, and limiting effects of … her symptoms [] are inconsistent because the evidence as a whole indicates that, despite her impairments, the claimant can perform work at all exertional levels with the nonexertional limitations set forth in the residual functional capacity finding above." AR 329. The ALJ pointed to medical and daily activities to support discounting plaintiff's allegations as to the severity of her symptoms.

Plaintiff argues that the ALJ erred in discounting her testimony on five grounds.

**A. Plaintiff's work history justified discounting her testimony.**

The ALJ concluded that plaintiff's reported activities, including that she was able to take care of light personal needs, show that she was able to work and thus undermined her allegations that she was disabled. The ALJ wrote that "as discussed previously, there is evidence that the claimant has worked since her alleged disability onset date, a fact *which if confirmed*, undermines her allegations of disabling symptoms." AR 333 (emphasis added).

Plaintiff argues that the ALJ's reasoning was error for three reasons. First, the ALJ's writing "if confirmed" is "speculative and not a clear and convincing reason to discredit a claimant's limitations testimony." OB 29. Second, the ALJ should have connected the justification for discrediting plaintiff's testimony to a "particular functional limitation claimed by" plaintiff. OB 29. Third, the inconsistencies the ALJ cited were "mundane self-care activities" that do not justify finding the plaintiff not credible.

An ALJ must "specifically identify any [] inconsistencies" between the claimant's testimony and the record evidence. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493–94 (9th Cir. 2015). The ALJ specifically identified plaintiff having told the IRS that she did not receive self-employment income in 2006 and 2007 while also having told the Social Security Administration in June 2009 that she was self-employed as a childcare provider in those years. AR 326. In May 2013, plaintiff told the Social Security Administration that she had worked as a babysitter from 2007 through December 2012. AR 326. The ALJ concluded that plaintiff "has made inconsistent and conflicting statements regarding her work history since at least 2006 and such inconsistencies cast grave doubt upon her allegations of inability to work." AR 326. The ALJ's use of plaintiff's

inconsistent work testimony provided substantial evidence for the ALJ to resultingly discount the plaintiff's testimony as to her disability.

The ALJ's observations about plaintiff's attested ability to engage in some self-care activities did not support discounting her testimony, however. Plaintiff told "psychologist Dr. Tobias in October 2013 that she was able to take care of her personal needs, prepare simple meals, perform light household chores, do light shopping, and take public transportation." AR 328. The ALJ used plaintiff's inconsistent past statements about her work history and her statement about basic self-care to conclude that "the evidence generally does not support the alleged loss of functioning." AR 333.

The Court agrees that the plaintiff's 2013 statement to Dr. Tobias about her ability to conduct basic self-care does not suggest that she "did not then experience pain and limitations severe enough to preclude [her] from *maintaining* substantial gainful employment," especially because the Ninth Circuit has "suggested that similar evidence that a claimant tried to work and failed actually *supported* his allegations of disabling pain." *Lingenfelter*, 504 F.3d at 1038. Nonetheless, plaintiff's prior inconsistencies about her work history provided the ALJ with substantial evidence to discount plaintiff's testimony.

**B. The ALJ was not justified in discounting plaintiff's testimony based on her past drug use.**

The ALJ additionally justified discounting plaintiff's testimony because her "inconsistent statements regarding her illicit drug use [] further undermine[d] her allegations of disabling symptoms and the reliability of her statements." AR 334. Plaintiff told Dr. Tom that she was sober in October 2010 but a month later told a Pathways to Wellness clinician that she had used methamphetamine in September 2010. AR 334. Plaintiff also told Dr. Tobas she was sober in October 2013, but the ALJ concluded that urine tests "performed shortly before and after that time were positive for illicit drug use, with the record as a whole suggesting ongoing substance abuse." AR 334.

Plaintiff argues that "(1) nowhere in the cited record did [plaintiff] say she was 'clean and sober,' (2) there is nothing actually inconsistent with what the ALJ points to: someone's use of

illicit drugs one month does not mean they did so the next, and (3) the purported, albeit misrepresented, statements are from more than two years before the period at issue," and, finally, the urine tests described as "performed shortly before and after that time" in which plaintiffs told Dr. Tobias she was sober were not "within even six months of it." OB 30–31.

Plaintiff is correct that the supposedly "inconsistent statements regarding her illicit drug use" are not in fact inconsistent. The ALJ cited a November 2010 Pathways to Wellness progress note from Nurse Practitioner Kelly Keller that said, "Last used meth Sept. 2010." AR 1234. The ALJ said that the November 2010 note was inconsistent with plaintiff telling Dr. Tom in October 2010, that she was "clean and sober," in the ALJ's words. AR 334. But all Dr. Tom did was cross the box for "Denied" in response to the "Recent Alcohol / Drug use" question on the M.D. Progress Note Medication Visit form. AR 1236. Even inferring that plaintiff told Dr. Tom that she had not engaged in recent alcohol or drug use, whether the use was "recent" and whether plaintiff *understood* the question to refer back to September 2010 is not clear nor addressed by the ALJ.

Further, the ALJ characterized two urine tests as being "performed shortly before and after" October 2013, when plaintiff told Dr. Tobias "that she was clean and sober," in the ALJ's words. The two urine tests in fact occurred either more than a *year* before the October 2013 statement or *eight months* after it. The ALJ cited Exhibit 5F/2–5, which was a May 27, 2012, intake evaluation form stemming from plaintiff's hospitalization that recorded "Utox indicates amphetamine use which also increases her risk of suicide" and elsewhere that an HGH lab indicates "U tox + meth." AR 1255. The ALJ also cited Exhibits 18F/36 and 19F/15–25, both of which referred to a June 2014 incident with at least one form indicating for "LAB Values: TOX+amphetamines and THC." AR 1529. Though the plaintiff appears to have engaged in "illicit drug use," the ALJ did not cite instances in which she "made inconsistent statements" about that drug use. AR 334. The positive drug tests were not "shortly before and after" October 2013. The government does not appear to contest plaintiff's argument on this issue. Thus, the ALJ's reliance on plaintiff's perceived "inconsistent statements regarding her illicit drug use" was not supported by substantial evidence.

**C. The ALJ erred in discounting plaintiff's testimony based on her purported**

**failure to follow prescribed treatment.**

The ALJ wrote that plaintiff's "failure to follow prescribed treatment without a good reason is another basis for finding the claimant not disabled" because the failure "suggests that her symptoms may not have been as severe as alleged or a possible unwillingness to do what is needed to improve her condition." AR 334. The ALJ concluded that, "[a]s the claimant did not appear at her hearings, she has not provided any other explanation for her lack of treatment compliance." AR 334.

But the ALJ's reasoning was flawed. For one, the instances of noncompliance with treatment occurred in 2010 or 2011, outside of the period for which plaintiff sought benefits. The lone instance of noncompliance within the period plaintiff seeks benefits was in January 2015 when claimant was hospitalized. "When a claimant does not follow treatment without a good reason," the ALJ reasoned, "the claimant may be found not disabled." AR 334 (citing 20 C.F.R. §§ 1530(b), 416.930(b)). But plaintiff did have a good reason. The attending physician at Alameda County Medical Center during her January 2015 hospitalization wrote, "Apparently, [plaintiff] has been off her medications for about a month and a half while she has been incarcerated at Santa Rita Jail, but it is unclear why she was not getting these medications while she was there." AR 1543. Given the highly controlled institution of a jail, the doctor's note indicates that plaintiff "was not getting" her medications while at Santa Rita jail, not that plaintiff voluntarily refused to follow her prescribed treatment plan. The government fails to respond to plaintiff's argument and instead merely recites the ALJ's listing of occasions of noncompliance. AB 18. Therefore, substantial evidence did not support the ALJ's purported reliance on plaintiff's noncompliance with treatment to discount her testimony.

**D. The ALJ erred in discounting plaintiff's testimony based on the record evidence of her efforts to seek treatment.**

The ALJ discounted plaintiff's account of her symptoms by pointing to "extended periods of time in 2011 and 2013-2015 during which the claimant did not seek any mental health treatment." AR 334. According to the ALJ, "[t]he lack of treatment efforts undermine[d] the

claimant's allegations of ongoing disabling symptoms." AR 334.

The ALJ failed to adequately justify this conclusion. In 2011 and 2014, plaintiff spent time in jail. AR 1431 (2011), 1415 (2014). Her 2011 intake form indicates that she was taking several medications under the heading "pre-admission medications" and that her "last dose" was "9 weeks ago." AR 1431 (2011). Plaintiff's 2014 hospitalizations indicate that she was taking prescription medication. AR 1552. The government does not meaningfully respond to plaintiff's arguments about the ALJ's purported conclusion that she failed to seek treatment. Therefore, substantial evidence did not support the ALJ's reliance on plaintiff's purported failure to seek treatment nor did the ALJ properly substantiate its reasoning for so concluding.

**F. Substantial evidence supported the ALJ's reliance on past clinician observations about possible secondary gain behavior.**

Finally, the ALJ found "some evidence of secondary gain behavior" and cited a "psychiatrist at John George Psychiatric Pavilion in May 2011 (Exhibit 5F/9-12) and as reflected in Dr. Tobias' and Dr. Kalman's observations that the claimant gave vague answers during their examinations." AR 334. Plaintiff argues that the ALJ's reasoning is faulty because the John George Psychiatric Pavilion observation occurred in May 2011, outside of the period at issue, and because the ALJ failed to explain how the secondary gain behavior "has anything to do with [plaintiff's] claimed limitations."

Though out of the period at issue, the John George Psychiatric Pavilion psychiatrist noted that there "also appears to be some secondary gain issues ('get back into a program, to get her kids back).'" AR 1261. This prior observation of possible secondary gain behavior could support the ALJ's conclusion that vague answers during in-period examinations were also evidence of secondary gain behavior. Thus, there was substantial evidence to support the ALJ's conclusion that there exists "some evidence of secondary gain behavior." AR 334.

**V. The ALJ's discounting of lay testimony was harmless error.**

The ALJ discounted the testimony of Cavawntay Alexander, a service coordinator who worked with plaintiff while plaintiff was living in a homeless shelter in Oakland, California, and wrote about plaintiff's behaviors that led to plaintiff's terminations from shelters in Alameda

County. AR 909. The ALJ did so because Alexander's testimony was "simply not consistent with the preponderance of the evidence." AR 335. Plaintiff argues that the ALJ erred by assigning weight to Alexander's testimony based on whether it was consistent with the rest of the evidence, rather than considering it as evidence properly incorporated into the ALJ's conclusions. OB 34.

In discussing how to formulate an RFC, "the regulations, Social Security Rulings, and [the Ninth Circuit's] case law, [] all require ALJs to take the claimant's symptom testimony into account in determining the RFC." *See Laborin v. Berryhill*, 867 F.3d 1151, 1154 (9th Cir. 2017). But "ALJs with frequency include the boilerplate language discrediting the claimant's symptom testimony because it is 'inconsistent with' the RFC in their disability determinations." *Id.* (quoting *Treichler*, 775 F.3d at 1103). "By doing so," the Ninth Circuit has explained, "the ALJ indicates that he or she did not properly 'incorporate a claimant's testimony regarding subjective symptoms and pain into the RFC finding, as [he or she] is required to do." *Id.* (quoting *Trevizo v. Berryhill*, 862 F.3d 987, 1000 n.6 (9th Cir. 2017)). Though dealing with lay testimony, a similar principle applies here because the Ninth Circuit's decision in *Laborin* relied on legal authorities requiring the consideration of claimant's testimony. *Id.* Some of those same authorities also promise that the SSA "will also consider descriptions and observations of your limitations … provided by you, your family, neighbors, friends, or other persons." 20 C.F.R. § 416.945. Thus, the Court concludes that the ALJ committed error here and should have incorporated Alexander's testimony into the RFC.[2]

That said, the ALJ's failure to provide more weight to Alexander's letter was harmless because the letter does not provide additional evidence beyond attesting to plaintiff "display[ing] behaviors that were so severe that they have caused her to be terminated from most of the shelters in Alameda County" and that she was hospitalized in January 2015. AR 909. Throughout the decision, the ALJ considered the severe behaviors and January 2015 hospitalization in far more detail than Alexander did. Thus, Alexander's letter was "inconsequential" to the ALJ's "ultimate

---

[2] The government argues that the ALJ may discount a nonmedical witness if the witness's opinion "mirrors a claimant's subjective allegations, and the ALJ validly discounts the subjective allegations." AB 20 (citing *Valentine v. Comm'r*, 574 F.3d 685, 694 (9th Cir. 2009)). But the ALJ did not validly discount plaintiff's testimony, as discussed above.

nondisability determination." *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

**VI. In determining plaintiff's RFC, the ALJ erred in declining to consider nonsevere impairments.**

Plaintiff argues that the ALJ erred by failing to consider all of her impairments, including nonsevere ones that did not meet steps two or three of the five-step disability evaluation. For example, the ALJ noted that during Dr. Tobias's October 2013 examination, the plaintiff "obtained scores indicating functioning in the borderline-low average range of cognitive functioning." AR 331. Plaintiff argues that the ALJ erred because it "never translate[d] that into limitations due to borderline intellectual functioning." OB 35. Plaintiff also argues that the ALJ erred by failing to incorporate mobility limitations arising from her morbid obesity, which the ALJ concluded was "nonsevere at step 2." OB 36.

A residual functional capacity assessment is a determination of what activities a plaintiff can do despite her physical, mental, or other limitations. *See* 20 C.F.R. § 404.1545(a). An ALJ determining an RFC "must consider limitations and restrictions imposed by all of an individual's impartments, even those that are not 'severe.'" *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). "The RFC therefore *should* be exactly the same regardless of whether certain impairments are considered 'severe' [at step two] or not." *Id.*

Here, record evidence supports finding limitations relating to plaintiff's borderline intellectual functioning and obesity. The ALJ noted that, "[d]uring psychological testing" with Dr. Tobias in 2013, plaintiff "obtained scores indicating functioning in the borderline-low average range of cognitive functioning." Plaintiff argues that her "documented history of behavioral issues in community settings contradicts the idea that she can consistently manage different environments without significant problems." OB 35. "Because the ALJ failed to consider [plaintiff's] borderline IQ, and intellectual functioning has significance beyond limitations to simple tasks," the ALJ erred in constructing plaintiff's RFC.

Similarly, plaintiff provided evidence of mobility limitations arising from her obesity. OB 12–13. As plaintiff notes, multiple sources suggest that plaintiff has mobility limitations. OB 12. Plaintiff testified to experiencing pain while walking, having difficulty walking up stairs and

carrying items, and struggling to push and being unable to pull items. AR 99–100. The examination by Dr. Lee finding exertional limitations, though occurring in 2009, AR 1220–25, received reinforcement from the 2013 examination by Dr. Pancho, who indicated that plaintiff has "exertional limitations" because of her "morbid obesity [and] myalgias" relating to carrying or lifting objects and standing or sitting. AR 153–54. Finally, an intake form from Santa Rita Jail on Christmas 2014 indicated "Yes" in response to "Mobility restrictions?" and "OBESITY" in response to "Describe other mobility restrictions." AR 1401. This evidence may not have changed plaintiff's RFC significantly, but the ALJ should have considered all limitations in determining plaintiff's RFC, not just those that reached step three. Failure to do so cannot be said to be harmless because the RFC may have changed if the ALJ had considered plaintiff's additional limitations together with her recognized severe impairments of bipolar disorder and substance use disorder.

The government argues that the ALJ did not need to consider the evidence of "an impairment of borderline intellectual functioning, [because] no such medically determinable impairment appears in the record," which the government supports with a citation to 20 C.F.R. § 404.1521, the regulation establishing how the Social Security Administration will determine whether a claimant has a medically determinable impairment *at step two*, not for purposes of the RFC. *Cf.* 20 C.F.R. §§ 1545, 1546 ("Residual Functional Capacity"). As explained above, an impairment need not satisfy step two or step three of the five-step analysis to be considered in constructing an RFC. Therefore, the ALJ's RFC was erroneous.

**VII. The ALJ committed error in applying an erroneous RFC at step five.**

Because the ALJ committed error in determining plaintiff's RFC, the ALJ also committed error in using that erroneous RFC when applying step five.

**VIII. The ALJ violated its independent duty to develop the record before it.**

Plaintiff argues that the ALJ breached its duty to develop the administrative record before it by failing to inquire as to additional records from the Pathways to Wellness program. OB 36. Plaintiff notes that the "last Pathways to Wellness treatment records obtained … end in July 2012." OB 36 (citing AR 1271–86). But documents in the administrative record show that plaintiff

"was receiving referrals back to Pathways and had scheduled appointments there before being discharged from her 5150 holds." OB 36 (citing AR 1499, 1500, 1504). Thus, plaintiff argues, the record before the ALJ was incomplete and did not show the full extent of plaintiff's treatment during the period at issue.

"The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan*, 242 F.3d at 1150 (cleaned up). The duty is "heightened where the claimant may be mentally ill and thus unable to protect her own interests." *Id.* "A specific finding of ambiguity or inadequacy of the record is not necessary to trigger this duty to inquire, where the record establishes ambiguity or inadequacy." *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011).

Here, the record established inadequacy. The Pathways to Wellness records made up a significant portion of the ALJ's reasoning in deciding plaintiff's case, and the ALJ relied on those records extensively. For example, in crafting the RFC, the ALJ wrote that "[t]reatment records from Pathways to Wellness have generally shown mild to moderate findings, even when the claimant has been using substances." AR 332. The ALJ used Pathways to Wellness records to discount Dr. Kalman's opinion, AR 332, and Dr. Kry's November 2010 opinion, AR 333, 334, and to discount plaintiff's own testimony as undermined by evidence of "repeated non-compliance," AR 334. As plaintiff points out, the documents before the ALJ showed that plaintiff received referrals and had appointments with Pathways to Wellness long after July 2012. OB 36 (citing AR 1499–1504, 1294). Given that the ALJ relied so heavily on the Pathways to Wellness records that were in the record, the ALJ should have taken steps to complete the record by procuring additional, relevant records from that program.

## IX. Plaintiff cannot show that the ALJ erred in considering plaintiff's failure to follow treatment plans.

Plaintiff argues that the ALJ erred because it considered "medical evidence and opinion" alongside plaintiff's purported "noncompliance and drug use" while also discounting other medical opinions such as her GAF scores. In its decision, the ALJ relied on "substantial evidence of repeated non-compliance with treatment" as "another basis for finding the claimant not

United States District Court
Northern District of California

disabled." AR 334. The ALJ reasoned that plaintiff's "failure to comply with treatment suggests that her symptoms may not have been as severe as alleged or a possible unwillingness to do what is needed to improve her condition." AR 334.

The parties agree that the relevant regulations require the ALJ to consider a failure to follow a prescribed plan of treatment only after determining whether plaintiff is disabled. *See Bustamante*, 262 F.3d at 954–55; OB 37; AB 24. But the regulations plaintiff cites, 20 C.F.R. §§ 404.1535, 416.935; SSR 18-3p, 13-2p, govern the consideration of drug addiction and alcoholism as factors in the disability determination. In his decision, the ALJ cited plaintiff's purported failure to take her prescribed medication for other mental health disorders, such as her reported failure to take Seroquel during her January 2015 hospitalization. AR 1458, 1543. Thus, the ALJ's consideration was not contrary to regulations governing the consideration of drug addiction and alcoholism prescribed plans of treatment.

## CONCLUSION

For the reasons noted above, several of the ALJ's determinations constituted legal error or were not supported by substantial evidence, and the Court cannot conclude that all of those errors were harmless. At the same time, the Court cannot conclude on the existing record that plaintiff is entitled to an award of benefits. The Court therefore reverses the Commissioner's decision and remands plaintiff's claim to the agency for further proceedings consistent with this order.

**IT IS SO ORDERED.**

Dated: September 28, 2026

P. Casey Pitts
United States District Judge